**Samuel M. KAYNARD, Regional Director of Region 29 of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner-Appellee,**

v.

**MMIC, INC., Respondent-Appellant.**

No. 987, Docket 83–6351.

United States Court of Appeals, Second Circuit.

Argued March 14, 1984.
Decided May 17, 1984.

Stanley Israel, New York City (Kliegman, Goldstein, Israel & Cooper, New York City, on the brief), for respondent-appellant.

John W. Hornbeck, Deputy Asst. General Counsel, N.L.R.B., Washington, D.C. (William A. Lubbers, General Counsel, John E. Higgins, Jr., Deputy General Counsel, Harold J. Datz, Associate General Counsel, Joseph E. Mayer, Asst. General Counsel and Barbara A. O'Neill, Washington, D.C., on the brief), for petitioner-appellee.

Before FRIENDLY, TIMBERS and MESKILL, Circuit Judges.

TIMBERS, Circuit Judge:

This is an appeal from a temporary injunction entered on motion of the National Labor Relations Board, in the Eastern District of New York, Jacob Mishler, *District Judge*, pursuant to § 10(j) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(j) (1982) (the Act), pending the Board's disposition of charges of unfair labor practices against the employer, MMIC, Inc. (the company). The Board's Regional Director, in seeking the temporary injunction, requested a cease and desist order and an order requiring the employer to bargain with Shopmen's Local Union 455, International Association of Bridge, Structural and Ornamental Workers, AFL–CIO (the union). The court granted the temporary injunction, including the request for an interim bargaining order.[1] We affirm and order that double costs and $1000 damages be assessed against the company.

I.

We summarize those facts and prior proceedings believed necessary to an under-

---

1. The court denied the Board's request for an order directing reinstatement of two discharged employees.

standing of the legal issues which we decide today. All events occurred in the fall of 1982, except as otherwise stated.

The company is engaged in the manufacture and installation of ornamental iron products. The Marchese brothers, Dennis and Anthony, are the only shareholders, officers, and directors of the company. Their father, Joseph Marchese, works for the company but is not compensated.

In September 1982, certain of the company's employees contacted the union regarding representation. Authorization cards were distributed. Four of the five employees signed the cards and turned them over to a union representative, Schifano. On October 1, Schifano arrived at the company's place of business and introduced himself to Dennis, the company's president. Schifano informed Dennis that the union represented a majority of the employees and demanded recognition. Dennis responded angrily that the union never would get in. Dennis then picked up a piece of iron pipe and threatened to hit Schifano on the head if he did not leave. At this time an employee appeared at the office door and witnessed Dennis' continuing threats against Schifano. Dennis later informed an employee that he had chased away a union representative. Dennis questioned this employee regarding his involvement with the union. On the following day, October 2, Dennis assembled the employees, read a telegram from Schifano demanding recognition and questioned the employees regarding their involvement with the union. Dennis announced that, if the employees had signed anything with the union, he would close the shop.

Later the same day, Dennis showed two employees a sample letter renouncing the union. He asked the employees to write and sign such letters, stating that otherwise they would lose their jobs. During this same conversation, Dennis promised, for the first time, to grant health benefits. When one employee, Dashner, refused to sign a renunciation letter, Dennis ordered him out of the shop. Joseph and Anthony Marchese later told Dashner that he could

have a day to think about his decision. That night, Dennis visited Dashner at his home and promised to give him a $3.00 raise rather than the $2.00 raise previously promised. He also told Dashner that another employee, Teskowich, was the union's organizer and would be fired in the morning.

On October 3, Dennis fired Teskowich for his union activities. On the same day, Dennis again demanded that two employees sign renunciation letters. Teskowich later was rehired on the condition that he sign a renunciation letter.

On October 12, during the continuing union campaign, Dennis promised the employees medical benefits and better vacation benefits.

On October 18, Dennis compelled two employees who Dennis perceived to be union leaders to lift heavier and heavier loads, while denying them, without explanation, the use of mechanical aids usually available to them.

The company also threatened employees just before the union representation election and conducted surveillance of employee conversations, meetings and other union activities.

On November 1, the Board conducted an election. The tally of ballots was inconclusive because three of the five ballots cast were challenged.

On December 30, based on unfair labor practice charges filed by the union, the Board's Regional Director filed a complaint against the company, alleging various employer unfair labor practices implicit in the events summarized above.

On February 28, 1983, the Board filed in the district court a petition pursuant to § 10(j) of the Act seeking the relief stated at the outset of this opinion. The parties in due course stipulated that the district court could take the case on submission based on the evidentiary record which was developed at a hearing held before an ALJ on March 14, 1983, followed by the ALJ's decision of June 30, 1983 in which he concluded that, during the course of the union campaign,

the company had engaged in conduct prohibited by § 8(a) of the Act in order to discourage employees from voting for the union. The ALJ recommended that all injunctive relief sought by the Board be granted, including an order requiring the company to recognize and bargain with the union as the exclusive bargaining agent.

On October 31, 1983, the district court filed a well reasoned opinion holding that there was "more than reasonable cause to believe that the unfair labor practices have been committed." The court further held that "the violations were sufficiently egregious" to warrant the extraordinary remedy of an interim bargaining order to preserve the status quo and to protect the rights of the employees pending final resolution of the dispute. From the judgment entered on the district court's opinion, this expedited appeal followed.

## II.

■ We have held that the two issues presented to a district court by a petition which seeks a § 10(j) [2] interim bargaining order are whether there is reasonable cause to believe that the unfair labor practices complained of have been committed and, if so, whether the relief sought is just and proper. *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1051 (2 Cir.1980); *Seeler v. Trading Port, Inc.*, 517 F.2d 33, 36–37 (2 Cir.1975).

With respect to the court's "reasonable cause" determination in the instant case, after reviewing the record, the findings of the ALJ and the court's opinion, we agree with the court's conclusion that there is more than reasonable cause to believe that the unfair labor practices complained of have been committed. Indeed, in terms of the number, variety, and malevolence of the unfair labor practices here involved, the company's course of conduct strikes us as an extraordinary example of unlawful interference with organizational rights.

Turning to the issue of whether the temporary injunctive relief sought, including the interim bargaining order, is just and proper, we set forth in *Seeler, supra,* 517 F.2d at 40, the circumstances under which a district court should issue a bargaining order under § 10(j).[3]

The court in the instant case made the requisite findings on both issues. The record amply supports these findings. We hold that this case is particularly appropriate for the issuance of an order requiring the company to bargain during the pendency of the unfair labor practice charges before the Board. A cease and desist order would have the effect only of freezing the post-election situation. Before the unfair labor practices, however, the union had received signed authorization cards for four of the five employees in the bargaining unit. The conditions as they existed before the company's unlawful campaign must be re-established. The bargaining order restores that status quo. *Id.* at 38–39.

The company asserts that the record does not support the granting of the ultimate relief, i.e. a final bargaining order issued by the Board, and therefore the record cannot sustain the interim bargaining order. We need not decide whether the conclusion would follow, since the premise is faulty. Our holding in *Seeler* was "that when the Regional Director makes a showing, based on authorization cards, that the union at one point had a clear majority and that the employer then engaged in such egregious and coercive unfair labor practices as to make a fair election virtually

---

**2.** Section 10(j) provides:

"The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper."

**3.** We reaffirmed this holding in *Kaynard v. Palby Lingerie, Inc., supra,* 625 F.2d at 1054.

impossible, the district court should issue a bargaining order under § 10(j). In such a case the election process has been rendered so meaningless by the employer, that the authorization cards are a clearly superior gauge of employee sentiment. A bargaining order then becomes a just and proper means of restoring the pre-unfair labor practice status quo and preventing further frustration of the purposes of the Act." That was precisely the situation here. Our decisions, *e.g., NLRB v. Windsor Industries, Inc.*, 730 F.2d 860 (2 Cir.1984); *NLRB v. Chester Valley, Inc.*, 652 F.2d 263, 272–73 (2 Cir.1981); *NLRB v. Jamaica Towing, Inc.*, 632 F.2d 208, 212–13 (2 Cir.1980), relating to Board issued bargaining orders have always recognized, as, indeed, the Supreme Court's holding in *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 613–14 (1969), compelled, that extensive analysis of other factors is not required as a condition of issuing a bargaining order in cases falling within the first category of *Gissel*, to wit, " 'exceptional' cases marked by 'outrageous' and 'pervasive' unfair labor practices", which render a fair election impossible. That is exactly what this case is.

There is no merit whatsoever in the company's final contention that the delays in commencing, processing and deciding this case have rendered the interim bargaining order inappropriate. The Board does not take lightly the commencement of a § 10(j) action. The time required for deliberation by the ALJ and the district court was not unreasonable as this type of case goes. And surely it does not lie in the mouth of the perpetrator of the egregious unfair labor practices disclosed by this record to complain of whatever delay may have ensued in applying a short leash and tightening the choke collar.

### III.

■ Pursuant to the authority of Fed.R. App.P. 38 [4] and 28 U.S.C. § 1912 (1982),[5]

we have not hesitated to assess double costs and damages for frivolous appeals. *E.g., Shuffman v. Hartford Textile Corp.*, 659 F.2d 299, 303–06 (2 Cir.1981) (double costs and $5000 damages assessed), *cert. denied*, 455 U.S. 1018 (1982), and cases cited, 659 F.2d at 303–04 n. 11; *Browning Debenture Holders' Committee v. Dasa Corp.*, 605 F.2d 35, 40–41 (2 Cir.1978) (double costs and $2500 damages assessed); *Fluoro Electric Corp. v. Branford Associates*, 489 F.2d 320, 326 (2 Cir.1973) (costs and $4500 damages assessed).

Sanctions, including double costs, damages and attorneys' fees, have been imposed on employers who have frivolously resisted Board orders. *NLRB v. Catalina Yachts*, 679 F.2d 180, 182 (9 Cir.1982) (double costs assessed); *NLRB v. Bedford Discounters, Inc.*, 484 F.2d 923 (1 Cir.1973) (costs and $250 expenses assessed). This is so even when the employer has resisted the extraordinary remedy of Board bargaining orders. *Monroe Auto Equipment Co., Hartwell Division v. NLRB*, 511 F.2d 611, 614 (5 Cir.1975) (double costs and reasonable attorneys' fees).

In our view, this is a particularly appropriate case in which to assess double costs and damages against the employer for its frivolous appeal. Not only was its anti-union conduct grossly outrageous; but its prolongation of proceedings by this frivolous appeal strikes us as a deliberate attempt to thwart the intent of Congress in providing in § 10(j) a swift interim remedy to halt unfair labor practices.

We order that the mandate issue forthwith; that the judgment of this Court include double costs and $1000 damages assessed against appellant and in favor of appellee; that execution on the judgment of this Court for damages issue forthwith; and that execution on the judgment of this

---

4. Fed.R.App.P. 38 provides:

"If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee."

5. 28 U.S.C. § 1912 in relevant part provides:

"Where a judgment is affirmed by ... a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs."

Court for costs issue ten days from the date of the taxation of costs according to law.

Affirmed, with double costs and $1000 damages assessed against appellant.