Daniel SILVERMAN, Regional Director of Region 2 of the National Labor Relations Board for and on behalf of the National Labor Relations Board, Petitioner–Appellant,

v.

J.R.L. FOOD CORP., d/b/a/ Key Food, Respondent–Appellee.

Docket No. 99–6189

United States Court of Appeals, Second Circuit.

Argued: Oct. 18, 1999

Decided: Nov. 16, 1999

Amy L. Dodds, Washington, D.C. (Frederick L. Feinstein, General Counsel, Mary Joyce Carlson, Deputy General Counsel, Barry J. Kearney, Associate General Counsel, Ellen A. Farrell, Assistant General Counsel, Judith I. Katz, Deputy Assistant General Counsel, on the brief), for Petitioner-Appellant.

S. Michael Weisberg, New York, New York, for Respondent-Appellee.

Before: KEARSE, LEVAL, and CABRANES, Circuit Judges.

PER CURIAM.

Petitioner Daniel Silverman, as a Regional Director of the National Labor Relations Board ("NLRB" or the "Board"), appeals from so much of an order of the United States District Court for the Southern District of New York, Richard Conway Casey, *Judge,* as denied his petition for a temporary injunction reinstating Alba Cortes to her employment with respondent J.R.L. Food Corp. ("JRL") pending the outcome of the Board's underlying unfair labor practice proceeding against JRL. On appeal, the NLRB contends principally that the district court failed to accord appropriate deference to the factual determinations of the Administrative Law Judge ("ALJ"). We agree, and we therefore reverse and remand for entry of the requested injunction.

The National Labor Relations Act ("the Act"), 29 U.S.C. § 151 *et seq.* (1994), empowers the NLRB, "upon issuance of a complaint ... charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred ... for appropriate temporary relief or restraining order." *Id.* § 160(j). To warrant the granting of relief under this section, the district court must find (1) "reasonable cause to believe that an unfair labor practice has occurred"; and (2) "that [granting] injunctive relief would be just and proper." *Silverman v. Major League Baseball Player Relations Committee, Inc.,* 67 F.3d 1054, 1059 (2d Cir.1995); *see, e.g., Kaynard v. MMIC, Inc.,* 734 F.2d 950, 953 (2d Cir.1984); *Kaynard v. Mego Corp.,* 633 F.2d 1026, 1030 (2d Cir.1980).

A court considering whether to grant temporary equitable relief pursuant to § 160(j) should give "[a]ppropriate deference" to the contentions of the NLRB and should decline to grant relief only if the NLRB's legal or factual premises are "fatally flawed." *Silverman v. Major League Baseball Player Relations Committee, Inc.,* 67 F.3d at 1059; *see Kaynard v. Mego Corp.,* 633 F.2d at 1033; *Kaynard v. Palby Lingerie, Inc.,* 625 F.2d 1047, 1051 (2d Cir.1980). "[A]n Administrative Law Judge's factual findings are part of the record and cannot be ignored," *Local 259, United Automobile, Aerospace and Agricultural Implement Workers of America v. NLRB,* 776 F.2d 23, 27 (2d Cir.1985); "the significance" of those findings "depends largely on the importance of credibility in the particular case," *Ewing v. NLRB,* 732 F.2d 1117, 1120 (2d Cir.1984) (internal quotation marks omitted). In reviewing a district court's decision on a § 160(j) petition, we will not overturn the court's findings of fact unless they are clearly erroneous, but we "may fully review its conclusions of law, including find-

ings of reasonable cause." *Kaynard v. Mego Corp.*, 633 F.2d at 1030.

The unfair labor practice proceeding underlying the present petition focuses on one of JRL's stores and the attempt of a local union (the "Union"), which had represented the employees at that store prior to its acquisition by JRL, to obtain recognition as the collective bargaining representative of the employees working at the store after JRL's acquisition. JRL is charged with violating the Act by, *inter alia*, directing its employees not to join the Union, interrogating employees about their Union activities, and threatening employees with discharge or a reduction in their work hours if they joined the Union. One such employee was Cortes, who had been a cashier at the store until JRL terminated her employment in late 1998. The ALJ held an evidentiary hearing at which testimony was received from numerous witnesses, including Cortes and other former employees, JRL co-owner Ruben Luna, and Manuel Matista, general manager of the store in question.

Cortes testified that, *inter alia*, Luna had incessantly warned her against joining the Union and had instructed her to fend off the Union by saying, falsely, that she was a relative of the owner and therefore was not interested in joining. Luna also asked her to tell him if other employees approached her about the Union, and he stated that he need not give employees 40-hour work weeks if they joined the Union and that he had already reduced the hours of one employee for getting involved with the Union. Cortes also testified that, when Luna eventually instructed her not to return to work, his explanation was that he had a new policy of not employing neighborhood residents in the store.

Luna, in contrast, testified that he had never spoken to Cortes about the Union and that it was Cortes who had introduced the subject with him. He also testified that he had fired her not because of any new policy, but because he caught her "passing merchandise," *i.e.*, giving store merchandise to her friends. Luna testified that he had seen Cortes giving away merchandise three times before he fired her, and that he thereafter learned from Matista that she had been giving away merchandise for four-to-five months.

In a Decision dated April 12, 1999, ("Decision"), the ALJ found that JRL had engaged in many (though not all) of the unfair labor practices with which it was charged. With regard to Cortes in particular, although finding Cortes's testimony (a) as to the frequency and duration of Luna's conversations about the Union to be "somewhat exaggerated," Decision at 20, and (b) as to precisely when she signed a Union card to be contradicted by other evidence, the ALJ found that she had been discharged because of her support of the Union. He found that on more than one occasion Luna had interrogated Cortes as to her own and other employees' involvement with the Union, had asked her to report to him if any employees approached her about the Union, and had threatened a reduction in employees' hours if they supported the Union. In making those findings, the ALJ relied in part on his assessments of the credibility of Cortes and Luna. He credited Cortes's testimony as to Luna's acts, noting that her testimony in that regard was consistent with the testimony of other witnesses, "who were particularly credible." *Id.* at 22 n. 25. He discredited Luna's general denials that he had spoken to any of his employees about the Union, noting, *inter alia*, that those denials were contrary to the consistent testimony of the former employees.

As to JRL's professed reason for firing Cortes, the ALJ noted that at the hearing "Cortes adamantly denied that she had given merchandise away to her friends and denied that Luna ever accused her of this," and the ALJ "f[ou]nd her denial that she passed merchandise convincing." *Id.* at 23. In contrast, the ALJ rejected the testimony of Luna, who "claimed that he saw her passing merchandise three times before he spoke to her and told her he had

to let her go," and "that he just walked away the first two times, even though he knew it was costing him money for her to give away merchandise." *Id.* The ALJ found this testimony "totally unbelievable." *Id.* He noted, *inter alia,* that "Luna's answers on cross-examination regarding what merchandise he saw her passing appeared to be made up as he went along"; and that "Luna's testimony also shifted regarding when he terminated Cortes," as he initially said he fired her during the workday but later said he fired her by telephone that evening when she was at home. *Id.* The ALJ further pointed out that while Luna testified that Matista told him Luna had been giving away merchandise for four-to-five months, Matista testified that, though he had seen Cortes give away merchandise once, he had never told Luna. The ALJ also stated that in general he "did not find Luna to be a very credible witness," noting, *inter alia,* that "Luna attempted to mislead the court by claiming that one of the witnesses who was under subpoena ... had quit, when in actuality the witness ... was employed and working on the day in question." *Id.* at 5; *see also id.* at 29–30 (that witness, Alex Duran, eventually testified, *inter alia,* that Luna had (a) first told him he did not need to comply with the subpoena, (b) then told him to appear and testify and that Luna would pay him $100 for that day (he normally earned $5.15 per hour), and (c) then recanted and told him not to appear; and that after Luna misrepresented in the proceedings that Duran had quit, he so informed Duran and told Duran to stay away from the store for the rest of the week, for which Duran would be paid). On the basis of his findings, based on the evidence found credible, the ALJ recommended, *inter alia,* that JRL be required to offer Cortes reinstatement.

In the present injunctive proceeding, the district court received no new evidence as to the events leading to the firing of Cortes, having granted the Board's motion to have the "reasonable cause" issue decided on the basis of the transcript and exhibits presented in the unfair labor practice hearing before the ALJ. The court nonetheless rejected many of the ALJ's credibility assessments and factual inferences, stating as follows:

> While taking heed that the regional director should be given the benefit of the doubt, and also the ALJ's decision, this court finds that there is not reasonable cause to believe that Alba Cortes was discharged as a result of union activities.

> According to the vice president of the respondent Ruben Luna, Alba Cortes was discharged for passing or effectively giving merchandise to certain customers without charging them. Luna states that he personally observed Cortes do this three times . . . .

> This testimony is further reinforced by the respondent's general manager Manuel Matista. Mr. Matista testified that Alba Cortes was passing merchandise to certain customers . . . .

> I find the ALJ's general assessment of Ruben Luna's credibility to be an insufficient basis to conclude that Alba Cortes would not have been discharged but for her union activities. Therefore, the court finds that it is likely that the Board will find that the ALJ's credibility finding in this action is overcome by the evidence.

(District Court Hearing Transcript, May 28, 1999 ("Tr."), 20–21.) The court concluded that Cortes was not discharged because of her support of the Union.

■ Viewing the record as a whole, we conclude that the district court, though referring to the proper standard for review of the ALJ's decision, did not accord that decision appropriate deference and that the court's finding of no reasonable cause is not supported by the record. There was ample evidence, consisting of Cortes's testimony and that of the corroborating employees, to establish reasonable cause to believe that the alleged unfair labor practices had occurred. The ALJ

credited that testimony. The district court relied on the testimony of Luna before the ALJ that Cortes was fired because Luna had personally observed Cortes giving merchandise to customers on three occasions. But the court pointed to nothing in the record to support Luna's testimony as to his observations. The ALJ, on the other hand, as described above, iterated several valid, concrete reasons for viewing Luna's testimony as untrustworthy. Further, though the district court stated that Luna's testimony was "reinforced" by Matista's testimony, in fact Matista contradicted Luna's testimony that Matista told Luna that Cortes had been giving away merchandise for four-to-five months. Matista testified that he had never told Luna of seeing Cortes give away merchandise.

The district court also stated that "[e]ven if there is reasonable cause to believe that [Cortes] was discharged in violation of the Act, the court finds that Alba Cortes' giving away of merchandise to be a sufficient reason for its finding that it is not just and proper to reinstate Alba Cortes." (Tr. 22.) We agree with the principle implicit in this statement, though not with its application here. If the factfinder found that an employee had stolen from her employer, we would agree that, even if she was fired solely for reasons that violated the Act, it would be within the district court's discretion to reach a conclusion of no "just cause" for her temporary reinstatement. *See generally McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 360–63, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) (employer's discovery, after unlawful discharge, of employee conduct that would have led to a lawful discharge if the employer had known of it, may preclude an order requiring reinstatement). Here, however, while Matista testified that he had seen Cortes give away merchandise once, the ALJ obviously rejected that portion of Matista's testimony, referring to the incident Matista "claimed" to have witnessed, and finding that Cortes's "adamant[ ] deni[al]" of having given away any merchandise was "convincing." Decision at 23. Although the ALJ did not explain its resolution of that conflict, we note that Matista apparently was still employed by JRL at the time of the hearing, and that where there was countervailing evidence the ALJ was inclined to discount portions of continuing employees' testimony that were favorable to JRL. *See, e.g.,* Decision at 5 (explaining that a certain employee "was a credible witness to the extent he gave testimony adverse to the Respondent. His testimony meant to negate the seriousness of the interrogation was far less credible, considering [the witness's] obvious desire not to bite the hand that fed him . . . .").

In sum, the record before the ALJ contained conflicting testimony on virtually all of the key issues, including whether Luna pressured Cortes and other employees not to join the Union and whether Cortes gave away merchandise. Those conflicts could be resolved only on the basis of assessments of the credibility of the various witnesses on each issue. The ALJ supported his credibility assessments of Cortes and Luna with detailed references to other testimony in the record, to documentary evidence, and to logical inferences to be drawn from the record. We see no basis in the evidence for the conclusion of the district court, whose decision was based solely on the record before the ALJ, that the Board will reject the ALJ's credibility assessments or overturn the findings that depend on those assessments.

We have considered all of JRL's contentions on this appeal and have found them to be without merit. The order of the district court is reversed, and the matter is remanded for entry of the requested temporary injunction for the reinstatement of Cortes.