Alvin BLYER, Regional Director of Region 29 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

P & W ELECTRIC, INC., d/b/a Pollari Electric, Respondent.

No. 01–CV–0471.

United States District Court, E.D. New York.

May 10, 2001.

Nancy K. Reibstein, National Labor Relations Board, Brooklyn, NY, for Petitioner.

### OPINION AND ORDER

GERSHON, District Judge.

Petitioner brings this application pursuant to Section 10(j) of the National Labor Relations Act ("the Act"), as amended, 29 U.S.C. § 160(j), for a temporary injunction pending final resolution by the National Labor Relations Board ("NLRB") of a consolidated complaint that charges respondent P & W Electric, Inc. ("P & W") with various unfair labor practices. An Administrative Law Judge ("ALJ") held a hearing on the complaint for 10 days between December 21, 2000 and January 17, 2001. The ALJ has not yet issued a decision, and, according to petitioner, none is anticipated for many months. Petitioner has provided me with a copy of the administrative record and asks that I rely upon that when deciding whether to issue an injunction. Respondent has made an additional proffer of evidence which was excluded by the ALJ at the hearing but which respondent claims is relevant to my determination of whether equitable relief is "just and proper" in this case. I have considered all of these materials as well as the briefs of the parties and oral argument by counsel, and, as is explained more fully below, I conclude that an injunction is warranted.

Section 10(j) provides that, upon the issuance of a complaint charging an unfair labor practice, the NLRB may petition the district court for appropriate temporary relief. Before granting injunctive relief under this section, district courts in the Second Circuit must find (1) "reasonable cause to believe that unfair labor practices have been committed" and (2) that the requested relief is "just and prop-

er." *Hoffman v. Inn Credible Caterers, Ltd.*, 247 F.3d 360, 365 (2d Cir.2001); *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1051 (2d Cir.1980). With respect to the "reasonable cause" prong of the analysis, a district court is not required to make a finding on the merits that an unfair labor practice has occurred. *See Inn Credible Caterers*, at 365. Rather, where there are disputed issues of fact, the district court should draw all inferences in favor of the NLRB, and it should sustain the NLRB's version of the facts as long as it is "within the range of rationality." *Kaynard v. Mego Corp.*, 633 F.2d 1026, 1031 (2d Cir. 1980). Even "on questions of law, the Board's view should be sustained unless the court is convinced that it is wrong." *Palby Lingerie*, 625 F.2d at 1051 (citations omitted); *see also Silverman v. Major League Baseball Player Relations Comm., Inc.*, 67 F.3d 1054, 1059 (2d Cir.1995) ("district court should decline to grant relief only if convinced that the NLRB's legal or factual theories are fatally flawed").

█ If the court finds reasonable cause, it then must apply traditional rules of equity to determine whether the relief requested is "just and proper." *See Inn Credible Caterers*, at 365; *Mego Corp.*, 633 F.2d at 1033. Injunctive relief should be granted pursuant to Section 10(j) when necessary to preserve or restore the status quo "as it existed before the onset of unfair labor practices," *Seeler v. Trading Port, Inc.*, 517 F.2d 33, 38 (2d Cir.1975), or to prevent irreparable injury where, for example, an employer's actions "threaten to render the Board's processes 'totally ineffective' by precluding a meaningful final remedy." *Mego Corp.*, 633 F.2d at 1034 (quoting *Trading Port*, 517 F.2d at 38); *see also Inn Credible Caterers*, at 365.

Petitioner argues that there is reasonable cause to believe that respondent violated Sections 8(a)(1) and 8(a)(3) of the Act by discharging Michael Finn and laying off Dane Ault and John Kwarta, all three of whom were engaged in union organizing activity, and by taking various other actions to discourage union membership such as interrogating employees about their union sympathies and imposing more onerous working conditions on union supporters. Section 8(a)(1) provides that it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7]." 29 U.S.C. § 158(a)(1). Section 7 gives employees the "right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Under Section 8(a)(3), an employer may not discriminate in "hir[ing] or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3).

█ The record amply supports petitioner's principal claim that there is reasonable cause to believe that respondent knew Finn, Ault and Kwarta were attempting to organize respondent's employees on behalf of Local 25, International Brotherhood of Electrical Workers and that respondent discharged or laid off those individuals because of their union activities in violation of Sections 8(a)(1) and 8(a)(3). Although respondent offers alternative, nondiscriminatory explanations for its actions, the NLRB's version of the events is well within the "range of rationality" and controls my resolution of factual disputes. *Mego Corp.*, 633 F.2d at 1031. Based upon the evidence, including the fact that the discharges occurred within days of a strike protesting respondent's alleged unfair labor practices, I find that

there is reasonable cause to believe that Finn, Ault and Kwarta were discharged because of their participation in the union organizing campaign and that respondent would not have discharged them in the absence of their union activities. *See National Labor Relations Bd. v. G & T Terminal Packaging Co.*, 246 F.3d 103, 114–17 (2d Cir.2001).

◼ In contrast, the record does not support petitioner's claim that there is reasonable cause to believe respondent violated Section 8(a)(1) by threatening employees with plant closure. This claim appears to be based entirely on a statement made by the owner of P & W, Patrick Pollari, during settlement negotiations in this case. Respondent argues that the statement was inadmissible and, alternatively, that the statement could not have been coercive because no employees heard the statement nor was it "made under circumstances calculated to assure that the employees would learn of" it. *H.C. Ladd and Son, Inc.*, 148 N.L.R.B. 30, 32 (1964). Besides Pollari, the only individuals who attended the settlement meeting were petitioner's counsel, respondent's counsel and Douglas McGrath, who petitioner identifies as the "business agent" for the union. Moreover, at respondent's request, the ALJ excluded all employees from the room, including Finn, when Pollari testified about the statement during the administrative hearing. Petitioner has not responded to either of respondent's arguments. Thus, even assuming the ALJ properly admitted Pollari's statement, I cannot conclude based on the record before me that there is reasonable cause to believe that the statement had a tendency "to interfere with, restrain, or coerce employees" in violation of Section 8(a)(1).

With that one exception, the remaining unfair labor practices alleged in the petition are supported by reasonable cause.

As with petitioner's claims of unlawful discharge, respondent disputes many of the relevant facts. Nonetheless, I am not convinced that petitioner's view is "fatally flawed," and, therefore, it must be sustained for the purposes of this petition. *Major League Baseball*, 67 F.3d at 1059.

◼ The next question is whether the injunctive relief requested by petitioner, namely a cease and desist order and an order requiring the reinstatement of Finn, Ault and Kwarta, would be just and proper. A cease and desist order is clearly appropriate in order to prevent respondent from engaging in any future unfair labor practices that might undermine the union's organizing campaign. *See Blyer v. Domsey Trading Corp.*, No. 91 CV 1304, 1991 WL 148513, *3 (E.D.N.Y. July 30, 1991).

◼ Reinstatement of Finn, Ault and Kwarta is also just and proper. In *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047 (2d Cir.1980), the Second Circuit upheld an injunction ordering the reinstatement of two employees who, like Finn, Ault and Kwarta, were discharged in the midst of a union organizing campaign. The Court of Appeals agreed with the district court that the reinstatement of the two "active and open union supporters" was just and proper because their discharge "risked a serious adverse impact on employee interest in unionization." *Id.* at 1053. Absent an interim reinstatement order, there is a similar risk here that the discharge of Finn, Ault and Kwarta, the three key union supporters in a bargaining unit of at most 15 employees, will chill, if not destroy, the union's organizational efforts. Under these circumstances, reinstatement is necessary to preserve the status quo as it existed prior to respondent's alleged unfair labor practices. *See Ahearn v. McGuire*, No. 94–CV–650S, 1994 WL 721371, *8–9 (W.D.N.Y. Oct. 27, 1994) (reinstatement of two union supporters fired

during organizational campaign was just and proper given the "threat of irreparable harm to employee interest in unionization"); *Silverman v. Whittall & Shon, Inc.*, No. 86 Civ. 1675, 1986 WL 15735, *1 (S.D.N.Y. June 6, 1986) (unless discharged union supporters are reinstated, "the employer would have effectively gained all the desired benefits from its alleged wrongdoing because no other worker in his right mind would participate in a union campaign"); *Hoffman v. Cross Sound Ferry Serv., Inc.*, Civil No. H–81–929, 1982 WL 2016, *6 (D.Conn. Feb. 22, 1982) (finding reinstatement of union supporter to be just and proper where it would "facilitate the resurrection of the unionization campaign that was effectively halted by the unfair labor practices").

The benefit to be gained by protecting the right of respondent's employees to organize is not outweighed by the harm that respondent claims it will suffer if ordered to reinstate Finn, Ault and Kwarta. First, respondent argues that it will have to lay off "innocent" employees in order to make room for Finn, Ault and Kwarta. However, any hardship that may be caused by the displacement of new employees is outweighed by the harm that will result if the union's organizational efforts are terminated prematurely. *Cf. Roth v. American Prop. Rights Ass'n Fuel Oil Buyers Group, Inc.*, 795 F.Supp. 577, 600–01 (E.D.N.Y.1992) (ordering reinstatement of union supporters "displacing, if necessary, any newly hired or reassigned replacement employees"); *Pye v. Excel Case Ready*, 238 F.3d 69, 73 (1st Cir.2001) (upholding injunction where district court had concluded that "any hardship incurred in the displacement of new employees due to reinstatement was outweighed by the restoration of a free and fair process for determining whether employees wanted to unionize").

■ Respondent also argues that it should not be required to reinstate Finn because he engaged in misconduct that would have justified his termination regardless of his union activities. In particular, respondent alleges that Finn insulted his supervisor by telling him he was bald and overweight and that he twisted the arm of another employee during an episode of roughhousing. These claims, even if true, are too minor to tip the balance of the equities in respondent's favor.

■ More significantly, respondent alleges that, on May 11, 2000, the day after a one-day strike, Finn attempted to breach the "reserved gate system" that had been established at the work site. The purpose of the reserved gate system is to isolate a labor dispute at a multi-employer work site by reserving a gate for the exclusive use of employees and suppliers of the subcontractor being picketed. As long as those employees and suppliers use only the reserved gate, the union may not picket the other "neutral" gates, leaving them unobstructed for use by those not involved in the labor dispute.

In support of its claim that Finn's alleged misconduct precludes his temporary reinstatement, respondent relies upon *Silverman v. J.R.L. Food Corp.*, 196 F.3d 334 (2d Cir.1999). In that case, the district court denied the NLRB's application for a temporary injunction, finding that reinstatement of a discharged employee was not just and proper because the employee had engaged in misconduct on the job. The district court based its denial of the injunction on the administrative record, which, unlike the case before me, included a decision issued by the ALJ. In that decision, the ALJ rejected the claim that the employee had engaged in misconduct and found, instead, that she had been discharged because of her union activities. The ALJ recommended reinstatement.

On appeal, the Second Circuit explained that it would have been within the discretion of the district court to find that temporary reinstatement was not just and proper if the ALJ had determined that the employee had engaged in misconduct. *See id.* at 338. Because the ALJ had rejected the evidence of misconduct, however, the Court of Appeals held that the district court had not accorded appropriate deference to the ALJ's decision and remanded for entry of the requested injunction.

Here, of course, there have been no factual findings by the ALJ concerning whether Finn engaged in the alleged misconduct, and the question of whether Finn's intent was to disrupt respondent's business is highly controverted. It is undisputed, however, that Finn did not actually breach the reserved gate system on May 11, 2000 and that, in any event, the strike was over by that time. Respondent states conclusorily that the May 11, 2000 incident "creat[ed] problems with P & W's customers (from whom they have received no further work orders since the confrontation with Finn)." On this limited showing, I cannot conclude that the May 11, 2000 incident is serious enough to support respondent's claim that Finn poses a significant threat to P & W's business such that reinstatement would not be just and proper. *Cf. McGuire,* 1994 WL 721371 at *9 (ordering reinstatement despite claim that two discharged union supporters had mistreated patients at respondent's nursing facility). Moreover, as petitioner acknowledged during oral argument, respondent remains free to *lawfully* discipline Finn if he engages in misconduct after being reinstated.

With respect to Ault and Kwarta, respondent argues that they were employed through a temporary labor supply company called TradeSource and that it would not be just and proper to require respondent to hire them directly. As petitioner points out, the NLRB has ordered employers to reinstate employees who were discharged in violation of Section 8(a)(3) even though those employees, like Ault and Kwarta, had been hired through a temporary employment agency. *See Capitol EMI Music, Inc.,* 311 N.L.R.B. 997, 1001, 1019–20 (1993). Respondent has not cited any authority that suggests this is not an appropriate remedy under the Act.

Rather, the basis for respondent's argument that reinstatement is not just and proper seems to be that it "may be liable" for financial penalties pursuant to its contract with TradeSource if it is required to hire Ault and Kwarta directly. According to that contract, respondent must pay TradeSource a "buyout fee" equal to 25 percent of the "annualized billing rate" if it wishes to hire any TradeSource "worker." It is unclear whether this clause even applies to Ault and Kwarta, neither of whom, according to respondent, is currently employed by TradeSource; whether TradeSource would enforce the clause even assuming it did apply, *see* Tr. 1439–42 (indicating that TradeSource has made "exceptions" when P & W breached the clause in the past); or how much the penalty would be. Such a speculative risk of harm does not justify denying petitioner the requested relief.

Finally, respondent claims that petitioner's delay has eliminated the need for a temporary injunction. Although respondent discharged Finn, Ault and Kwarta in May 2000, the NLRB did not file its petition in this court until January 2001. I find that the NLRB's delay was not excessive given the amount of time necessary to investigate the charges and the fact that the parties were engaged in settlement negotiations. Moreover, "[d]elay by itself is not a determinative factor in whether the grant of interim relief is just and prop-

er. Delay is only significant if the harm has occurred and the parties cannot be returned to the status quo or if the Board's final order is likely to be as effective as an order for interim relief." *Dunbar v. Northern Lights Enters., Inc.*, 942 F.Supp. 138, 147 (W.D.N.Y.1996) (quoting *Aguayo v. Tomco Carburetor Co.*, 853 F.2d 744, 750 (9th Cir.1988)). Based upon petitioner's representation that Finn, Ault and Kwarta all wish to be reinstated, respondent cannot demonstrate that the NLRB's delay has impaired my ability to restore the status quo or that a final Board order, which could be many months away, would be as effective as a temporary injunction issued by this Court.

### CONCLUSION

Accordingly, petitioner's application for a temporary injunction pursuant to Section 10(j) is granted. A separate injunction order will issue.

**SO ORDERED.**

### *TEMPORARY INJUNCTION*

This matter is before the Court pursuant to the verified petition of Alvin Blyer, Regional Director of Region 29 of the National Labor Relations Board, by Attorney Nancy Reibstein. Upon notice to Respondent P & W Electric, Inc., d/b/a Pollari Electric, herein Respondent, and its counsel and consideration of the petition, the entire record, the papers filed concerning the petition and the arguments of counsel, and having found reasonable cause to believe that Respondent violated Sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, as amended, and having found that injunctive relief is just and proper, it is hereby

ORDERED that the application by Petitioner for an injunction pursuant to Section 10(j) of the National Labor Relations Act against Respondent is granted, and it is further

ORDERED that Respondent, its officers, agents, representatives, servants, employees, attorneys and all members and persons acting in concert or participation with it or them, be and they hereby are, enjoined and restrained, pending the final disposition of the matters involved herein pending before the National Labor Relations Board, from, in any manner, or by any means:

A. discharging, laying off or suspending its employees because of their membership in, support for or protected activities on behalf of the Union;

B. refusing to offer to reinstate or to recall its employees to their former positions of employment because of their membership in, support for or protected activities on behalf of the Union;

C. failing or refusing to give certain benefits to employees because of their membership in, support for or protected activities on behalf of the Union;

D. imposing more onerous working conditions on employees because of their membership in, support for or protected activities on behalf of the Union;

E. threatening employees with reprisals to discourage their protected union activities;

F. coercively interrogating employees about their union activities and the union activities of other employees; and

G. in any other manner interfering with, restraining or coercing its employees in the exercise of the rights guaranteed in Section 7 of the Act; and it is further

ORDERED that Respondent, its officers, agents and representatives shall:

A. Within five days of the issuance of this Court's order, offer immediate interim reinstatement to employees Michael Finn, John Kwarta and Dane Ault to their former positions of employment and with the

wages, benefits and other working conditions they enjoyed, displacing, if necessary, any workers hired or reassigned to replace them;

B. Immediately post copies of the Court's opinion and order at Respondent's main office located in West Babylon, New York, and at all job sites and locations where Respondent's notices to employees are customarily posted, said postings to be maintained during the Board's administrative proceeding free from all obstructions and defacements. All employees shall be granted full and unrestricted access to said notices, and agents of the Board shall be granted reasonable access to Respondent's main facility in West Babylon, New York, to monitor compliance with this posting requirement; and

C. Within 20 days of the issuance of the Court's order, provide the Court and Region 29 with a sworn affidavit from a corporate official stating with specificity the manner in which Respondent has complied with the Court's order, including how the documents have been posted as required by the Court.

**SO ORDERED.**