Karen **FERNBACH**, Regional Director, Region 2, National Labor Relations Board, For and on Behalf of the National Labor Relations Board, Petitioner,

v.

**3815 9TH AVENUE MEAT AND PRODUCE CORP.,** d/b/a Compare Supermarket, Respondent.

No. 12 Civ. 0823(GBD).

United States District Court, S.D. New York.

June 27, 2012.

Brigham John Bowen, U.S. Department of Justice, Laura Teresa Vazquez, National Labor Relations Board, Washington, DC, Simon–Jon Hiroshi Koike, New York, NY, for Petitioner.

Joseph S. Rosenthal, Law Office of Joseph S. Rosenthal, New York, NY, for Respondent.

## MEMORANDUM DECISION AND ORDER

GEORGE B. DANIELS, District Judge:

Petitioner Karen P. Fernbach, the Regional Director for Region 2 of the National Labor Relations Board ("the Director"), for and on behalf of the National Labor Relations Board ("The Board"), petitioned this court pursuant to Section 10(j) of the National Labor Relations Act ("The Act"), (29 U.S.C. § 160(j)), for injunctive relief seeking an interim order requiring Respondent to cease and desist from alleged unlawful labor practices in violation of sections 8(a)(1) and 8(a)(3) of the Act,[1] and for

---

1. Sections 8(a)(1) and 8(a)(3) of the Act pro-    vide that an employer engages in an unfair

the reinstatement of five employees that were discharged on or about October 22, 2011. Pet'r's Mem. in Supp. Temp. Inj. P. 1. The temporary relief is sought in the interim pending the final disposition of an unfair labor practice claim currently before the Board.

On April 18, 2012, this Court ordered that all findings of fact for purposes of this petition for an injunction be based solely on the administrative record developed during the administrative hearing held March 5, 6, and 7, 2012. *See* April 18, 2012 Order, Docket 31. This includes the transcript of the hearing, and the exhibits introduced into evidence during the hearing.

The petition for injunctive relief requiring Respondent to cease and desist from engaging in unlawful labor practices and to reinstate the five employees discharged pending determination of the unfair labor practice claim is granted.

### Facts

Respondent owns and operates a supermarket located at 3815 9th Avenue, New York, NY. (Riezgo Tr. 46:3–47:13). Pedro Riezgo is the general manager of Respondent, and has worked in that capacity since the store's opening in 2006. (*Id.* at 44:12–22). Respondent's operation is divided into several departments. These departments include: produce, dairy, frozen, meat, and grocery. The five employees who were discharged, and whose reinstatement is an aspect of the relief sought in this matter, were employees of the grocery department at the time of their termination. (*Id.* at 74:13–75:11). These five employees are Pedro Castillo ("Castillo"), Juan Munoz ("Munoz"), Ramon Santos ("Santos"), Manuel Tavarez Nunez ("Tava-

rez"), and Barido Rodriguez Tejada ("Rodriguez").

In June 2011, the United Food and Commercial Workers Union, Local 342 (the "Union") began efforts to organize the employees in Respondent's meat department. (Union Organizer Irmaliz Fontanez Tr. 156:6–12). The Union was only seeking to represent employees of the meat department at that time. (*Id.* at 156:15). The Union filed a representation petition with the Board on July 21, 2011 in order to represent all full-time and regular part-time meat department employees. *Id.* The meat department workers voted in a Board-run election on October 9, 2011, and the Union won by a vote of 15 to 1. Gov. Exh. 3(c).

The Union was certified as the collective bargaining representative for Respondent's meat department employees on October 18, 2011. Gov. Exh. 3(d). According to Petitioner, on the following day, Castillo, Tavarez, Santos, Munoz, and Rodriguez of the grocery department met in a stock room in the back of the store and discussed their shared interest in joining the Union. Pet'r's Mem. in Supp. Temp. Inj. P. 4; (Rodriguez Tr. 177:1–6; Castillo Tr. 107:6–17). Rodriguez expressed their interest in the Union to Javier Garcia, an employee in the newly unionized meat department. (Rodriguez Tr. 177:20–178:18). After relaying the grocery department employees' interest in the Union to the Union organizers, Garcia obtained authorization cards to distribute to the grocery department employees. (Fontanez Tr. 157:20–24). Santos and Rodriguez received authorization cards from Garcia, and signed and returned them to the Union. (Fonta-

---

labor practice if it "interfere[s] with, restrain[s], or coerce[s] employees in the exercise of the rights guaranteed" by the Act, and if it "discriminat[es] in regard to hire or ten-

ure of employment ... to discourage membership in any labor organization." 29 U.S.C. §§ 158(a)(1) and (a)(3).

nez Tr. 158:2–3; Santos Tr. 196:22–198:15; Rodriguez Tr. 178:21–180:14; Gov. Exhs. 9, 10).

On October 22, 2011, around 1:00 p.m., grocery employee Castillo informed the grocery department manager, Rafael Grullon, that "they" were going to join the Union. (Castillo Tr. 108:20–21). After Grullon inquired who "they" were, Castillo responded with the names of Rodriguez, Santos, Tavarez, and himself. (*Id.* at 108:21–22). Tavarez also told Grullon of his plan to join the Union that day, but spoke only for himself. (Tavarez Tr. 149:11–150:19). Respondent's ' general manager, Pedro Riezgo, testified that less than an hour after Castillo's brief conversation with Grullon about Union activity, Riezgo told three of those employees who were then at work (Castillo, Munoz, and Tavarez), and a fourth grocery employee, Concepcion Torreblanca ("Torreblanca"), to leave work and return the following Monday, when Riezgo would inform them if he still had work for them. (Riezgo Tr. 75:16–76:17; Castillo Tr. 109:13–19; Munoz Tr. 131:19–132:14; Tavarez Tr. 149:22–151:16). Riezgo testified that he directed Grullon to call the last two of the five discharged employees (who were not at work at the time), Santos and Rodriguez, and inform them that they should not come in to work that weekend. (Riezgo Tr. 77:1–6). Later in the day, after a discussion with grocery department manager Grullon, Riezgo decided not to discharge Torreblanca. (Riezgo Tr. 80:9–12).

The following Monday, October 24, 2011, Munoz returned to work as he had been told. (Munoz Tr. 132:15–17). Riezgo then gave Munoz his final wages and discharged him. (*Id.* at 133:11–15). Munoz asked Riezgo why he was being fired. Riezgo first stated that the store could not afford to pay his wage, but also added that "the

man from the meat department called the union" (Munoz Tr. 133:15–17), implying that Munoz's firing was related to union organizing activity. Riezgo went on to clarify that the "man" he was referring to was "Javier." (*Id.* at 133:17–18). Javier Garcia was the only "Javier" in the meat department according to a store roster. (Gov. Exh. 5). Riezgo informed Castillo, Santos and Rodriguez that their employment was terminated later that same day. (Castillo Tr. 109:19–110:1–7; Santos Tr. 200:3–14; Rodriguez Tr. 182:8–14). According to Mr. Rodriguez, Riezgo informed him that the employees with the most seniority at the supermarket would remain working for the store. (Rodriguez Tr. 184:24–185:2). Castillo, Munoz, Tavarez, Santos, and Rodriguez were the only employees discharged by Respondent on October 24, 2011. (Riezgo Tr. 80:16–18).[2]

Following the discharge of the five employees, there was discussion amongst some of the remaining employees and they drew the conclusion that Respondent fired the five due to their interest in joining the Union. (Carlos Uceta Sanchez ("Sanchez") Tr. 227:25–228:2, 229:4–5). Union activity at the store ceased after the discharges. (*Id.* at 229:23–230:12). In the weeks following the discharges, the Union made several attempts to organize other departments in the store. Union organizer, Irmaliz Fontanez attempted to speak with two employees, separately, in November after the discharges. But after introducing herself as a Union representative she was met with the response of "I'm fine" from one worker, and the other indicating that she did not want to speak to Fontanez out of fear of losing her job. (Fontanez Tr. 159:14–18, 160:1–5). Fontanez inquired, from then-unionized meat department employees, about the interest in

2. Although Castillo did not specifically inform his manager that Juan Munoz was one of the employees planning to join the Union, Mr. Munoz was included in the group discharged.

Union membership among employees in other departments. They informed her that employees feared losing their jobs and were now afraid to join the Union. (Fontanez Tr. 162:11–163:5). Since the discharges, the Union has not received any additional authorization cards from any of Respondent's employees. (Fontanez Tr. 163:11–14).

In explaining the discharges, Respondent asserted that, "after thorough analysis, management determined that it was not necessary to employ eleven full time employees in the Grocery Department and that it would be more cost-efficient to operate the department with six full-time employees and to assign overtime to them only when required." (Gov. Exh. 12 (letter from Respondent's Counsel, Joseph Rosenthal, to Board dated November 28, 2011, at p. 2)). No evidence has been submitted regarding this analysis. Respondent has conceded that Riezgo did not consult or create any documents relating to the decision making process that led to the five employees being discharged. (Riezgo Tr. 73:22–25). Riezgo further testified that the store's owner had directed him, at least two or three times a month since late 2009, to cut the entire store's payroll. (Riezgo Tr. 54:22–56:5).

Respondent's general manager Riezgo testified that the discharges were made in response to the slowing down of business in all departments, specifically during the third week of October. (Riezgo Tr. 361:25–362:1; 383:5–384:7). However, according to the grocery department payroll records, every employee in the department worked overtime during the third week of October. (Riezgo Tr. 387:13–388:1–3; Gov. Exh. 11 (Time card reports dated 10/22/2011)). There is no evidence of a decline in Respondent's revenues in the record, and Respondent concedes that it had never before discharged an employee due to financial hardship prior to October of 2011. (Riezgo Tr. 77:25–78:11).

The Board conducted an investigation of charges of unfair labor practice between October 25 and November 30, 2011. Gov. Exh. 1(i). Following that investigation, on December 20, 2011, the Board issued a Complaint alleging unfair labor practices of Respondent in violation of sections 8(a)(1) and 8(a)(3) of the Act. *Id.* On March 5, 6, and 7, 2012, an administrative hearing was held before Board Administrative Law Judge Lauren Esposito. The matter is currently pending decision.

### Section 10(j) Petition for Injunctive Relief Standard

In deciding a section 10(j) petition,[3] this Court must determine (1) "whether there is reasonable cause to believe that unfair labor practices have been committed" and, if so, (2) "whether the requested relief is 'just and proper.'" *Kaynard v. Mego Corp.*, 633 F.2d 1026, 1030 (2d Cir.1980) (quoting *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1051 (2d Cir.1980)).

As to the first determination, the question is whether "there is 'reasonable cause to believe that a Board decision finding an unfair labor practice will be enforced by a Court of Appeals.'" *Dunbar*

---

3. Section 10(j) (29 U.S.C. § 160(j)) provides: The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

*v. Landis Plastics, Inc.*, 977 F.Supp. 169, 175 (N.D.N.Y.1997) (quoting *Mego Corp.*, 633 F.2d at 1033). In a proceeding for section 10(j) relief, the Regional Director should be given the benefit of the doubt even when there are disputed issues of fact in the case. *Seeler v. Trading Port, Inc.*, 517 F.2d 33 (2d Cir.1975). "Unless the district court is convinced that the legal position of the Regional Director is wrong ... a finding of reasonable cause must ensue." *Mego Corp.*, 633 F.2d at 1033 (citing *Danielson v. Int'l Org. of Masters, Mates and Pilots*, 521 F.2d 747 (2d Cir. 1975)). Thus, a district court "should sustain [the Regional Director] if [her] choice is within the range of rationality." *Danielson v. Joint Bd. of Coat, S. & A.G. Workers' Union*, 494 F.2d 1230, 1245 (2d Cir.1974).

■ In determining whether the requested relief is "just and proper," this Court applies traditional equitable principles. *Blyer v. P & W Elec., Inc.*, 141 F.Supp.2d 326 (E.D.N.Y.2001). A temporary injunction, under section 10(j), is appropriate "when necessary to preserve or restore the status quo 'as it existed before the onset of unfair labor practices.'" *Blyer*, 141 F.Supp.2d at 329 (quoting *Trading Port, Inc.*, 517 F.2d at 38).

*Reasonable Cause*

■ Petitioner argues that there is reasonable cause to believe Respondent violated sections 8(a)(1) and 8(a)(3) of the Act when it discharged Pedro Castillo, Juan Munoz, Ramon Santos, Manuel Tavarez, and Barido Rodriguez Tejada immediately after learning of their interest in organizing the grocery department with the Un-

ion. The evidence supports such a conclusion.

The close proximity in time between when Respondent's general manager, Riezgo, first learned of the Union activity in the grocery department and when the discharges took place strongly supports a finding of reasonable cause that the Act was violated. The Union had just won its vote in the meat department on October 18, 2011. The record is clear that grocery department manager, Grullon, was told by Castillo at some time close to 1:00 p.m. on Saturday October 22, 2011 that the grocery department employees were planning to join the Union.[4] Within an hour of receiving this information, Riezgo instructed three of the later discharged employees who were at work that day (Castillo, Munoz, and Tavarez) to leave and return the following Monday. Later in the same day, Grullon, at Riezgo's instruction, called the two other employees (Santos and Rodriguez) to tell them not to report to work that weekend. By Monday, all five employees were fired. The abrupt nature of the mid-day dismissals, and the ultimate discharges, were unconnected to any other incident other than Castillo's disclosure of interest in Union membership. There is therefore reasonable cause to believe that the motivation for the discharges was Respondent's knowledge that these grocery employees were beginning to mobilize department support for the Union.

The evidence demonstrates that Respondent's purported reasoning for the discharges—a desire to secure cost savings by a reduction in the staff—is unsupported by the record and likely pretextual. In support of its contention, Respondent as-

---

4. Although Mr. Munoz was not one of the names of the Union organizers given to the manager, Munoz was told by Riezgo that he was fired because of union activity. This is evidence of a group discharge motivated by anti-Union animus. This would be so even if Respondent's awareness of every discharged employee's interest in Union membership had not been established. *Majestic Molded Products, Inc. v. NLRB*, 330 F.2d 603, 606 (2d Cir.1964).

serts that the owner, Porfirio Damiani, had given Riezgo instructions to "try to figure out how to cut the payroll of the store" at least two or three times a month since late 2009, in order to cut the entire store's payroll. (Riezgo Tr. 54:22–56:5; 72:2–4). However, Respondent has provided no reasonable explanation for why this instruction, having gone ignored for years up until the point of the discharges, was finally acted upon in October of 2011. The general manager's coincidental implementation of this alleged requested payroll reduction, within an hour of learning of the employees' interest in Union organizing, renders this explanation unpersuasive.

Respondent contends that the decision to fire the five employees was the result of a "thorough analysis" that led management to the conclusion "that it was not necessary to employ eleven full time employees in the Grocery Department and that it would be more cost-efficient to operate the department with six full-time employees and to assign overtime to them only when required." (Gov. Exh. 12 (letter from Respondent's Counsel, Joseph Rosenthal, to Board dated November 28, 2011, at p. 2)). However, there is no evidence in the record of such a thorough analysis, and no evidence that any objective process was used to determine which employees to terminate.

Respondent's general manager Riezgo testified that the discharges were made following a slow week in business in every department of the store during the third week in October. (Riezgo Tr. 361:25–362:1; 383:5–384:6). However, according to the grocery department payroll records, every employee in the department worked overtime during the third week of October. (Riezgo Tr. 387:13–22; Gov. Exh. 11 (Time card reports dated 10/22/2011)). There is no evidence of a decline in Respondent's revenues during this time. Further, Respondent provides no explanation for why, if the entire store was experiencing slow business, all five of the discharges were made solely from the grocery department's staff. Additionally, Respondent concedes that it had never before discharged an employee due to financial hardship prior to October of 2011. (Riezgo Tr. 77:25–78:11). Taken together, these facts undermine the notion that the discharges were due to a financial hardship experienced by Respondent.

The record demonstrates that the timing of the discharges in relation to Respondent first learning of the Union activity, coupled with the pretextual nature of Respondent's purported reasons for firing the grocery employees, provide reasonable cause to believe that Respondent violated sections 8(a)(1) and 8(a)(3) of the Act.

*Issuance of an Injunction is Just and Proper Relief*

Having found reasonable cause to believe the Act has been violated, this Court turns to whether the requested injunctive relief seeking an interim order requiring Respondent to cease and desist from alleged unlawful labor practices in violation of sections 8(a)(1) and 8(a)(3) of the Act, and for the reinstatement of the five employees that were discharged on or about October 22, 2011, is just and proper.

█ A temporary injunction is an extraordinary remedy and should be granted sparingly under section 10(j) only "when necessary to preserve or restore the status quo 'as it existed before the onset of unfair labor practices.'" *Blyer*, 141 F.Supp.2d at 329 (quoting *Trading Port, Inc.*, 517 F.2d at 38). Section 10(j) injunctive relief is also appropriate when an employer's practices "threaten to render the Board's processes 'totally ineffective' by precluding a meaningful final remedy." *Mego Corp.*, 633 F.2d at 1034 (quoting *Trading Port, Inc.*, 517 F.2d at 38).

After a finding of reasonable cause to believe that employees were discharged in violation of the Act, Courts have granted section 10(j) injunctive relief, in both the form of a cease and desist order and an order compelling reinstatement, recognizing that the discharge of "active and open union supporters" creates the risk of "a serious adverse impact on employee interest in unionization." *Palby Lingerie, Inc.*, 625 F.2d at 1053; *See Also, Blyer,* 141 F.Supp.2d 326.

Here, Respondent discharged all known Union supporters from the grocery department. The early stages of the grocery department employees' organizing efforts have effectively been stymied. The record establishes that reinstatement is just and proper in this case specifically because there is evidence that the result of the discharges has elevated beyond a "risk" of adverse impact on interest in Union membership. The testimony of both a former employee of Respondent, and the Union's organizer, recounting employee sentiment after the discharges demonstrates that Respondent's acts have actually caused a fear of Union organizing amongst employees. This adverse impact continues to calcify as more time passes without restoration of the status quo prior to the charged unfair labor practice. Accordingly, the requested injunctive relief is granted.

### Conclusion

The petition for injunctive relief is GRANTED.

SO ORDERED.

### *ORDER*

### *ORDER GRANTING INJUNCTION UNDER SECTION 10(j) OF THE NATIONAL LABOR RELATIONS ACT*

The Petition and affidavit of Karen P. Fernbach, Regional Director for Region 2 of the National Labor Relations Board, having been filed pursuant to Section 10(j) of the National Labor Relations Act (61 Stat. 149; 73 Stat. 544; 29 U.S.C. 160(j)), herein the Act, praying, *inter alia,* for issuance of an order enjoining and restraining Respondent 3815 9th Avenue Meat and Produce Corp., d/b/a Compare Supermarket, herein Respondent, from engaging in certain acts and conduct in violation of Section 8(a)(1) and (3) of the Act, pending the final disposition of the matters involved herein pending before said Board, and

It appearing to the Court from the evidence adduced that there is reasonable cause to believe that Respondent has engaged in serious and pervasive unfair labor practices in violation of Section 8(a)(1) and (3) of the Act and, unless enjoined and restrained, enforcement of important provisions of the Act and of the public policy underlying it will be thwarted before Respondent can be placed under legal restraint through the regular procedure of a Board order and an enforcement decree;

**IT IS HEREBY ORDERED** that pending the final disposition of this matter by the National Labor Relations Board, Respondent, its officers, representatives, agents, servants, employees, attorneys, and all persons acting in concert, or participation with it or them are enjoined and restrained, pending final disposition of the matters involved herein which are now pending before the Board, from in any manner or by any means:

> Discharging or laying off employees because they supported the Union or engaged in other concerted, protected activities and in order to discourage employees from engaging in those activities.

**IT IS FURTHER ORDERED** that pending the final disposition of this matter by the National Labor Relations Board, Respondent, its officers, representatives, agents, servants, employees, attorneys,

and all persons acting in concert, or participation with it or them shall:

(a) Within five (5) days of the issuance of the Court's Order, offer in writing the following 5 employees laid off or discharged in October 2011 immediate reinstatement to their former positions, without prejudice to their seniority or other rights and privileges previously enjoyed:

i. Pedro Castillo;

ii. Juan Munoz;

iii. Manuel Tavarez Nunez;

iv. Ramon Santos; and

v. Barido Rodriguez Tejada

(b) Within five (5) days of the issuance of the Court's Order, post copies of the District Court's Order in this proceeding, and a translation of this Order in Spanish approved by the Regional Director, at the Employer's facility at 3815 9th Avenue, New York, NY, at all locations where Employer notices to employees are customarily posted; maintain said posting during the term of the Order, ensure that all employees shall have free and unrestricted access to said postings; and grant agents of the Board reasonable access to said facility to monitor compliance with this posting.

(c) Within twenty (20) days of issuance of this decree, file with the District Court, with a copy served to the Regional Director, Region 2, a sworn affidavit from a responsible official setting forth with specificity the manner in which the Respondent is complying with the terms of the decree.

SO ORDERED.